[Civ. No. 2652.    Second Appellate District, Division One.—July 25, 1919.]

## KATE HALE, Administratrix, etc., Respondent, v. MARY G. KENNEDY, Administratrix, etc., Appellant.

[1] QUIETING TITLE—PERSONAL PROPERTY.—An action to quiet title to personal property does not lie.

[2] APPEAL—ORDER DENYING NEW TRIAL—SUFFICIENCY OF COMPLAINT. On an appeal from an order denying a motion for a new trial, the sufficiency of the complaint cannot be reviewed.

[3] ID.—CONFLICT OF EVIDENCE—JURISDICTION OF APPELLATE TRIBUNAL. The matter of resolving conflicting evidence is for the trial court, and if any substantial conflict appears, the appellate tribunal has no right to disturb the conclusion reached by the trial court.

[4] ID.—ACTION TO DETERMINE OWNERSHIP OF NOTES—JUDGMENT SUSTAINED BY EVIDENCE.—In this action to determine the ownership of certain promissory notes secured by mortgages, although the evidence was conflicting, there was sufficient substantial evidence to support the judgment of the trial court that the notes were the separate property of the wife and not the property of the estate of the deceased husband.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. John W. Shenk, Judge. Affirmed.

---

1. Right to bring equitable action to quiet title to personalty, note, Ann. Cas. 1914B, 344.

The facts are stated in the opinion of the court.

G. Roy Pendell and Pendell & Gleason for Appellant.

Kemper B. Campbell, A. W. Sorenson, L. B. Hibben and Frank. P. Doherty for Respondent.

JAMES, J.—Bridget O'Neill and Michael O'Neill, now deceased, were husband and wife. The husband died in January, 1913, leaving surviving him a widow, two sons, and two daughters. One of the daughters, Mary G. Kennedy, procured letters of administration to represent the estate of Michael O'Neill. The widow, Bridget O'Neill, held title to some real property, the same standing of record in her name, and she brought first an action against the administratrix of her husband's estate for the purpose of having it determined that such property was her sole and separate estate. She succeeded in that action and obtained judgment. Subsequently she brought this action against Kennedy, administratrix, to secure a like judgment determining that she was the sole owner of six promissory notes secured by mortgages. She was successful in this action, and the administratrix of the husband's estate has taken an appeal from an order denying her motion for a new trial. Pending the hearing on this appeal Bridget O'Neill died, and Kate Hale, another of the daughters, has been substituted plaintiff herein, she having been appointed administratrix of her mother's estate. The subject of this action, as has already been stated, concerns promissory notes with the mortgage security which was incidental thereto. The notes and mortgages were all taken in the name of Bridget O'Neill. In passing, we note that there was a demurrer to the complaint made upon the ground that no sufficient cause of action was stated. [1] Evidently the demurrer should have been sustained, because an action to quiet title to personal property does not lie. This has been directly decided in this state. (*Fudickar* v. *East Riverside Irr. Dist.,* 109 Cal. 29, 38, [41 Pac. 1024]; *Lamus* v. *Engwicht,* 39 Cal. App. 523, [179 Pac. 435].) [2] We are not permitted to consider that matter, however, as the appeal is only from an order denying a motion for a new trial, under which the sufficiency of the complaint cannot be reviewed. (*Wadman*

v. *Burke,* 147 Cal. 351, [3 Ann. Cas. 330, 1 L. R. A. (N. S.) 1192, 81 Pac. 1012].)

The question to be reviewed under the appeal from the order denying the motion for a new trial is as to the sufficiency of the evidence to sustain the judgment. [3] At the outset of a consideration of the question we may reiterate the oft-repeated statement of the rule that the matter of resolving conflicting evidence is for the trial court, and that if any substantial conflict appears, the appellate tribunal has no right to disturb the conclusion reached by the trial judge. [4] And our conclusion is, after a careful examination of the testimony as shown in the statement of the case, that there was some substantial evidence to sustain the findings of the trial judge. Enumerating briefly the promissory notes mentioned in the complaint, all of which were secured by mortgages, there were: The note of Hendersons for $1,110; the note of Wilcoxes for $1,621.80; the note of Gerwings for one thousand dollars; the note of Webbs for one thousand five hundred dollars; the note of Rusts for two thousand one hundred dollars, and the note of Fred and Clara O'Neill for $750. The complaint shows that at the time of the commencement of the action the notes of the Hendersons and Webbs had been paid to Bridget O'Neill, and that she held the proceeds. The O'Neills, husband and wife, came from Ireland to the United States in 1860. At the trial Bridget testified that she had some money when she arrived in America and that when she married Michael he had nothing; that she worked out and accumulated some money which she converted into paper money called "shinplasters"; that the couple lived in New York for two years and then moved to Iowa, and that at that time she used about eight hundred dollars, investing in a cow and building a house; that they later moved to Michigan, where she gave her husband some money with which he purchased four acres of ground. Various purchases of real estate were thereafter made and considerable profit was realized on the transactions, especially on the real property acquired in California, to which state the family removed a number of years prior to Michael's death. Bridget testified that after making the purchase of land in Michigan with the money which she had saved prior to the marriage, and with money received from crops growing on the land

and chickens, pigs, and calves which she sold, she made complete payment on the Michigan property. In that connection she testified as follows: "My husband, Michael O'Neill, told me that I could have, as my separate property, all moneys received from the sale of potatoes, chickens, pigs, calves, butter, eggs, etc." While in Michigan she received $250 from an estate of her aunt. She loaned this $250 to her husband, taking his promissory note for it, which she testified had not been paid. The Michigan farm was sold for two thousand dollars and forty acres of land, one thousand dollars of the money being used to repay a loan, and the forty acres received were mortgaged for the sum of one thousand dollars. Property was purchased in Pomona, California, consisting of several parcels. Some property was purchased in South Pasadena, this state. During the residence of the family in California one thousand dollars was received by Bridget as beneficiary under a life insurance policy after the death of her son. This one thousand dollars was used to pay a portion of the purchase price of the Pomona property. Between the years 1863 and 1880 nine children were born to the O'Neills. Bridget O'Neill testified that her husband's health was not good and that he was not able to work a great deal; that this was particularly true as to the latter years of their residence in California. It appears that the husband was suffering from cancer of the face, which was of some years' standing. The notes mentioned in the complaint were all received to represent a portion of the proceeds upon the sales of various parcels of real property owned by the O'Neills. The deeds to what we will call the Webb property and the Fred and Clara O'Neill property, as originally made, were directly to Bridget O'Neill. The deeds to the other property were made in the name of Michael O'Neill. It is the contention of appellant that section 164 of the Civil Code, which provides that in case a conveyance is made to a married woman the presumption is that the title is vested in her as her separate property, does not apply to notes and mortgages taken in the name of the wife. It is very evident that this presumption does apply to the proceeds of the property sold to the Webbs and to Fred and Clara O'Neill, and that the question for the trial judge in the case of those notes was to determine whether the

42 Cal. App.—26

presumption had been overcome. Conceding that the presumption did not apply to the other notes, the question was as to whether there was sufficient evidence to indicate that the other property had always been the separate property of Bridget O'Neill, or whether a gift of it had been made to her by the husband. The fact that these notes were made to the wife, with the incidental mortgages, is certainly to be taken as some evidence tending to show a gift by the husband. We cannot, as counsel seem to suggest we should, assume that these mortgages may have been taken without the knowledge of the husband, for it was necessary for the husband to make a deed of the property to the grantees, and the court would be altogether justified in inferring that he knew of the mortgages being made in the name of the other spouse, even though there was no evidence indicating such knowledge. But there was evidence to indicate that the husband intended that the wife should have this property as her separate estate. A neighbor of the O'Neills living at Pomona, testified that in conversation with the husband the latter referred to some real estate at San Bernardino which Mrs. O'Neill was about to purchase, and that O'Neill "just told me that mother had bought a piece of ten acres down there." This witness further testified that he sold feed for a cow and horse to the O'Neills and that Mrs. O'Neill always paid him; that at one time he owed O'Neill money and there being money owing for feed, he thought to equalize accounts, but O'Neill said: "No; you pay me and mother will pay for the feed." Fred O'Neill, a son, testified that prior to his father's death he visited him at Pomona, at a time when the last piece of property which had theretofore stood in the name of the father had been sold, and talked with the father; that the father said to him: "It is all right now. The property has all been disposed of and mother owns it all." Katherine Hale, a daughter, testified that on one occasion she remembered her mother bringing home a mortgage (it being the Rust mortgage) and that her father examined it and, after he had read it, said: "Everything is all right now." There was other testimony of a similar character to that narrated, but we think that enough has been stated to illustrate the fact that the court was not without warrant in concluding that the promissory notes and mortgages were the separate

property of Bridget O'Neill. The circumstances would justify such a conclusion. Assuming that the husband's earnings as a part of the community estate made up a portion of the purchase price of the real property, it was most natural that in the latter years of his life, being afflicted with an incurable disease which was progressing toward a fatal termination, he should desire that the wife should have the results of the hard-earned capital which they had produced by their joint efforts. We do not think it necessary that he should in terms and formally declare that he presented his interest in the property to the wife. Circumstances, consisting of conduct, words, and such admissions as were testified to, would be sufficient to establish the fact of a gift. We are leaving out of account, of course, testimony introduced on behalf of defendants in contradiction of that produced for the plaintiff, because it is wholly immaterial in view of the restrictions upon this court's duty in examining the appeal. It seems unnecessary, in view of the fact that the only question under consideration relates to the sufficiency of the evidence, to review any of the authorities cited. As to the real property, deeds to which were originally taken in the name of Bridget O'Neill, the presumption under the section cited that the spouse taking it took it as her separate estate, applied unless overcome by testimony for the defendant. Concerning the other notes and mortgages, as we have before stated, the fact that they were taken in the name of the wife (even though the presumption allowed by the section did not apply) afforded some evidence, not sufficient perhaps by itself, tending to show that the wife had acquired the same as her own. Aided by the other facts and circumstances shown in evidence, a sufficient case can easily be made out.

For the reasons given the order appealed from is affirmed.

Conrey, P. J., and Shaw, J., concurred.